**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

PATRICK LEE SMITH, an individual, and )
PATRICK LEE SMITH and )
MISHCA SMITH, as next of friends )
for P.M.S., a minor child, )
     )
        Plaintiffs, )
     )
     )
v. )     Case No. CIV-18-808-D
     )
COYLE PUBLIC SCHOOLS, )
COYLE SCHOOL BOARD OF EDUCATION, )
JOSH SUMRALL, )
CARL WILLIAMS, )
TENNY MAKER, )
JAY CRENSHAW, )
CHAD MAKER, and )
JOHN PROSS, )
     )
        Defendants. )

## ORDER

Before the Court is Plaintiffs' Motion to Compel Testimony [Doc. No. 60].

Defendants responded in opposition [Doc. No. 68], and Plaintiffs replied [Doc. No. 72].

## BACKGROUND

The facts surrounding the present dispute have been set forth in the Court's Order

of September 28, 2020 [Doc. No. 77], and do not need to be restated here. In that Order,

the Court directed Defendants to produce, for *in camera* review, a summary of the

conversation that took place on November 13, 2017, among Defendant Josh Sumrall

(former superintendent of Coyle Public Schools ("CPS")); Defendant Carl Williams

(president of CPS Board of Education ("the Board")); and Larry Lewis (attorney for CPS).[1] The Court found an *in camera* review was necessary to determine whether Defendants have met their burden of proving the existence of a privilege.  The Court has now completed its *in camera* review and rules as follows.

## DISCUSSION

As previously noted, Defendants' assertions of the attorney-client privilege are governed by federal law.  Under federal common law, the elements of the attorney-client privilege are:

> (1)Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Lewis v. Unum Corp. Severance Plan*, 203 F.R.D. 615, 618 (D. Kan. 2001).  The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor."  *Id.*  (quoting *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).  "However, the mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged."  *Hinsdale v. City of Liberal*, 961 F. Supp. 1490, 1494 (D. Kan. 1997).  As such, "[t]he party seeking to assert the privilege must show that the particular communication

---

[1] The Court also directed Defendants to submit *in camera* a copy of the attorney representation or engagement letter detailing Mr. Lewis' contractual arrangement with CPS and/or the Board.  Defendants have advised that Mr. Lewis did not have a written engagement letter or contract, nor did he bill CPS for his appearance at the November 13, 2017 board meeting.

2

was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential." *Id.* "'[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.'" *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1370 (10th Cir. 1997) (quoting *Upjohn Co v. United States*, 449 U.S. 383, 390 (1981)).

The privilege "is to be strictly construed, and . . . extended no more broadly than necessary to effectuate its purpose." *Great Plains Mut. Ins. Co. v. Mut. Reinsurance Bureau*, 150 F.R.D. 193, 196 (D. Kan. 1993). The party asserting the privilege "has the burden of establishing its applicability." *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995); *accord In re Grand Jury Proc.*, 616 F.3d 1172, 1183 (10th Cir. 2010).

### A. The conversation is protected by the attorney-client privilege.

The Court, having reviewed *in camera* the summary of the conversation, concludes that the conversation is protected by the attorney-client privilege. CPS was the client, and Sumrall and Williams were acting as agents or representatives of CPS. Sumrall and Williams sought legal advice from Mr. Lewis, who was acting in his capacity as the attorney for CPS. Their communications, which were made in confidence, related to Sumrall's decision to move forward with the suspension or repeal it.

Pursuant to OKLA. STAT. tit. 70, § 5-105, every school district is a "body corporate" that possesses the usual powers of a corporation for public purposes. A board of directors for a school district serves as the district's board of education and "the governing board" for the school. *See* OKLA. STAT. tit. 70, § 5-106(A); *I.T.K. v. Mounds Pub. Schools*, 451

P.3d 125, 137 (Okla. 2019).  Generally, the official actions of a school board occur by the board in a public meeting.  *Mounds Pub. Schools*, 451 P.3d at 139.  However, a school board "is not in a perpetual meeting, and some person or persons must act for the board of education when the board is not meeting."  *Id*.  A superintendent is appointed and employed by the board as the executive officer of the board, and performs duties as directed by the board.  OKLA. STAT. tit. 70, § 5-106(A); *Mounds Pub. Schools*, 451 P.3d at 139.

The Oklahoma Administrative Code states that "[i]t is proper practice for the board of education to grant authority to its executive officer to represent it during the interim between board meetings on routine business management problems."  OKLA. ADMIN. CODE § 210:10-1-7(b).  Thus, a "superintendent is a public day-to-day representative for the board of education."  *Mounds Pub. Schools*, 451 P.3d at 140.

Plaintiffs assert that it was improper "for Sumrall and the Board to share counsel at the proceeding where the Board was sitting as the adjudicator and the Superintendent was prosecuting the appeal."  [Doc. No. 60 at 16].  Yet, Plaintiffs present no authority to support their assertion that the Board and Sumrall performed such roles.  Under § 24-101.3(A), a school board must adopt a policy with procedures to provide for out-of-school suspension of students.  OKLA. ADMIN. CODE § 24-101.3(A).  Such policy must provide for an appeals process, as described in § 24-101.3(B), and specify whether the appeal is to a committee composed of administrators or teachers or both, or to the board of education.  OKLA. ADMIN. CODE § 24-101.3(B).  "Upon full investigation of the matter, the committee or board shall determine the guilt or innocence of the student and the reasonableness" of the out-of-school suspension.  *Id*.

4

Consistent with OKLA. ADMIN. CODE § 24-101.3(B), the CPS Student Handbook includes procedures for out-of-school suspensions.  [Doc. No. 56-14].  Specifically, it provides that "[i]n the event the student and/or his/her parents or guardian are dissatisfied with the outcome of the hearing before the superintendent, the superintendent shall notify the parents or guardian and the student in writing of his/her decision and the student's right of appeal to the school board."  [Doc. No. 56-14 at 2].  Neither the Oklahoma Administrative Code nor the CPS Student Handbook indicate that the superintendent prosecutes the appeal to the Board.  Nor do the agenda or meeting minutes for the November 13, 2017 board meeting identify such roles for the Board and Sumrall.  [Doc. Nos. 60-2, 60-3].  Rather, the agenda indicates that P.M.S. did not contest the misconduct supporting the suspension, but only challenged whether suspension was reasonable [Doc. No. 60-2].

Mr. Lewis' representation of CPS allowed him to communicate with members of the Board and Sumrall without waiving the attorney-client privilege.  Pursuant to OKLA. STAT. tit. 70, § 5-117(A)(14), the Board has the power to contract with an attorney to represent CPS.  Further, the Board is not a separate and independent legal entity from CPS, and no legal authority expressly gives it the authority to hire an attorney for itself.  *See* OKLA. STAT. tit. 70, § 5-117(A)(14); 1978 OK AG 158 at ¶ 7; *Primeaux v. Indep. Sch. Dist. No. 5 of Tulsa Cnty. Okla.*, 954 F. Supp. 2d 1292, 1295 (N.D. Okla. 2012) (concluding based on the language of the Oklahoma statutory scheme that Oklahoma school boards are not separate, suable entities and any claims against the school board are duplicative of claims against the school district).

It is well established that the attorney-client privilege attaches to corporations. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) (citing *Upjohn Co.*, 449 U.S. 383). Because a corporation cannot speak directly to its lawyers, it must act through agents. *Weintraub,* 471 U.S. at 348. The United States Supreme Court has held that the attorney-client privilege covers communications between counsel and top management and counsel and lower-level employees. *Id.* (citing *Upjohn Co.*, 449 U.S. 383). Further, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Weintraub*, 471 U.S. at 348; *Sprague*, 129 F.3d at 1371. Accordingly, a conversation between the Board's president and CPS superintendent—acting as agents of CPS, the "body corporate,"—with CPS's attorney, involving the implications of a public disciplinary proceeding and the school's obligation to keep student education records confidential, is covered by the attorney-client privilege.

Further, Sumrall and Williams shared a common legal interest; that is, the best interest of CPS. *See, e.g., Roe v. Cath. Health Initiatives Colo.*, 281 F.R.D. 632, 637 (D. Colo. 2012) ("the presence of a third-party will not destroy the attorney-client privilege if the third-party is the attorney's or client's agent or possesses commonality of interest with the client."). Following their privileged conversation, Mr. Lewis announced to the public that it was "in the best interest of [CPS] that all disciplinary action against [P.M.S.] be repealed." [Doc. No. 60-3].

The Court further finds that Defendants have not placed the privileged conversation "at issue," and that the so-called *Hearn*[2] factors militate against waiver. *Seneca Ins. Co. v. W. Claims, Inc.*, 774 F.3d 1272, 1276 (10th Cir. 2014). Defendants have not filed any claims against Plaintiffs, nor asserted any defenses based on the advice of counsel. Nor have Defendants placed the protected conversation at issue by making it relevant to the case. To the contrary, Defendants have continually argued that the conversation is not relevant to any party's claim or defense because Sumrall rescinded the second suspension before P.M.S. served it.

Further, the requirement that the information sought be "vital" to Plaintiffs' claims "necessarily implies" that the information "is available from no other source." *Frontier Refin., Inc. v. Gorman-Rupp Co.,* 136 F.3d 695, 701 (10th Cir. 1998). Here, Plaintiffs inquired of Sumrall during his deposition about what led him to repeal the suspension. [Doc. No. 48-2 at 50–52]. He stated that he repealed the suspension after talking to Lewis and Williams because he believed discussing students in the public domain was not in the best interest of the school. *Id.* Plaintiffs did not further inquire of Sumrall regarding the conversation.

---

[2] *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). "Under the *Hearn* test, 'at-issue' waiver requires—(1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to [its] defense." *Seneca Ins. Co.*, 774 F.3d at 1276.

7

## B. The privileged conversation is not relevant to any party's claims or defenses.

When the relevance of a discovery request is not clear, the party seeking the discovery has the burden to show relevance. *Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010). The Court finds that relevance of the request is not apparent, and that Plaintiffs have not met their burden of showing relevance. Plaintiffs assert that the conversation bears on two substantive issues: (1) whether the due process rights of P.M.S. were violated; and (2) whether the Board violated Oklahoma's Open Meeting Act ("OMA").

It is undisputed that Sumrall rescinded the second suspension before P.M.S. served it. Plaintiffs have not articulated a theory under which Sumrall's withdrawal of the suspension implicates a liberty or property interest of P.M.S. *See, e.g.*, *Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1227 (D. Colo. 2014) (holding that a student was not deprived of a protected liberty or property interest where he was not expelled or suspended from the university, was only temporarily suspended from the track team, and was allowed to continue as a teaching assistant).

Further, the Court finds that the privileged conversation is not relevant to any alleged violation of the OMA. The OMA defines a "meeting" as "the conduct of business of a public body by a majority of its members being personally together." OKLA. STAT. tit. 25, § 304(2). A majority of the members of the Board were not present during the conversation. The Board's president, the school district's lawyer, and superintendent do not make up a majority of the Board. Further, the conversation did not transpire while the

Board was conducting business.  It occurred while the board meeting was being relocated from the board room to the school cafeteria.  Thus, there was no meeting of a public body subject to the OMA.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Compel Testimony [Doc. No. 60] is **DENIED**.

**IT IS SO ORDERED** this 28th day of October 2020.


_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge